**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PATRICK STEPHENSON,

      Plaintiff,

v.                                                              Case No: 8:21-cv-2256-CEH-MRM

MOUNTAIN RUN SOLUTIONS,
LLC, CHRIS CARTER and BRIAN
FULLER,

      Defendants.

_____/

**O R D E R**

This matter comes before the Court on Plaintiff's Renewed Motion for Default Judgment Against Defendants Mountain Run Solutions, LLC; Chris Carter, and Brian Fuller (Doc. 43).  In the motion, Plaintiff requests entry of default judgment against these Defendants, pursuant to Fed. R. Civ. P. 55(b)(2). The Court, having considered the motion and being fully advised in the premises, will grant in part Plaintiff's Renewed Motion for Default Judgment and enter judgment in favor of Plaintiff and against Defendants Mountain Run Solutions, LLC and Brian Fuller.

## I.     BACKGROUND

### A. Factual Allegations

This action was initiated on September 24, 2021, by Plaintiff, Patrick Stephenson ("Plaintiff" or "Stephenson"), against Defendants Experian Information Solutions, Inc. (Experian"); Mountain Run Solutions, LLC ("Mountain Run"); Chris

Carter ("Carter"), and Brian Fuller ("Fuller") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq.* ("FCCPA"), and against Mountain Run and Experian for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). Doc. 1.

Stephenson is a resident of Lakeland, Polk County, Florida. Doc. 30 ¶ 6. Defendant Experian is a nationwide consumer credit reporting agency. *Id.* ¶ 9. Defendant Mountain Run is a limited liability company with a primary business address in Utah and is registered to do business as a consumer collection agency in the State of Florida. *Id.* ¶¶ 10, 14, 15. Defendant Fuller is an owner and officer of Mountain Run and is involved in the day-to-day operations of Mountain Run. *Id.* ¶ 16. Carter is an owner and officer of Mountain Run and is involved in the day-to-day operations of Mountain Run. *Id.* ¶ 17.

Mountain Run, Fuller, and Carter are debt collectors within the meaning of the FDCPA and the FCCPA in that they use instrumentalities of commerce, including postal mail and the internet, interstate and within the State of Florida, for their businesses, the principal purposes of which are the collection of debts, and/or they regularly collect or attempt to collect. *Id.* ¶ 19.

Purportedly, in January 2016, Plaintiff incurred a debt of $2,103 to Vivint Smart Home, Inc. ("Vivint"), a home security company, for services related to home security. *Id.* ¶ 20. Plaintiff disputes owing any such debt (the "Vivint debt") or authorizing any charges to Vivint. *Id.* ¶ 21. The Vivint charges were for family, personal, or household

purposes, specifically home security services, and therefore meet the definition of "debt" under the FDCPA, 15 U.S.C. § 1692a(5) and the FCCPA, Fla. Stat. § 559.55(6). Doc. 30 ¶ 22.

Vivint sells its services primarily through door-to-door salespersons, who are paid on commission. *Id.* ¶ 25. Records from the Better Business Bureau indicate that Vivint is rated an "F," the lowest possible rating, and that a substantial number of the thousands of complaints against the company concern bills for services never ordered. *Id.* ¶¶ 23, 24.

As alleged by the Federal Trade Commission ("FTC"), Vivint's sales representatives frequently resorted to fraud to make a sale. *Id.* ¶ 26. Since credit approval was required to make a sale, sales representatives who were unable to obtain credit approval for a particular customer would use a tactic known informally as "white paging," in which sales representatives use the white pages to find a different customer with the same or similar name as the prospective customer with bad credit. *Id.* ¶¶ 26, 27. The sales representative would then use the unrelated person's name to obtain credit approval for the customer with bad credit. *Id.* ¶ 27. In other instances, a sales representative may use the name of a relative or friend of the prospective customer and obtain a credit history and approval using that relative or friend's information. *Id.* ¶ 28. Vivint sold delinquent and charged-off accounts to third party debt buyers and/or brokers. *Id.* ¶ 29. Included in these accounts were unwitting co-signors or "white paged" consumers. *Id.* ¶ 30. Plaintiff alleges he was one of these consumers. *Id.* ¶ 31.

In June 2017, the Vivint debt was assigned to or purchased by Mountain Run's predecessor, Perfection Collection. *Id.* ¶ 32. Perfection Collection began reporting the debt to Experian in August 2017 as an unpaid collection account. *Id.* ¶ 33. Around October 2019, after Perfection Collection began to conduct business as Mountain Run, Mountain Run began reporting the Vivint debt to Experian as an unpaid collection account. *Id.* ¶ 34. Mountain Run indicated the Vivint debt was "first reported" in October 2019, even though the same debt had been reported two years prior. *Id.* ¶ 35. Reporting a debt to a consumer collection agency is an attempt to collect a debt. *Id.* ¶ 37.

In March 2020, Plaintiff disputed the Vivint debt, stating it was not owed. *Id.* ¶ 38. Experian's automated dispute resolution system sent an automated consumer dispute verification request ("ACDV") to Mountain Run who responded that the debt was accurate. *Id.* ¶¶ 40, 41. If a data furnisher such as Mountain Run reports that data is verified as accurate, the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true. *Id.* ¶ 42. Plaintiff alleges that zero evidence exists to support the conclusion that Mountain Run's reported data was true. *Id.* ¶ 43. Mountain Run also failed to report that the debt was disputed. *Id.* ¶ 44. Similar disputes in April 2020 and July 2020 resulted in no change, other than Experian adding a "consumer statement" to his credit report stating, "I have no knowledge of this account." *Id.* ¶ 65.

According to Plaintiff, Mountain Run typically does not respond to consumer complaints and rarely responds to lawsuits brought against it by consumers. *Id.* ¶ 78. Carter and Fuller, in their capacities as owners and managers of Mountain Run, were responsible for implementing Mountain Run's collection policies, including the intentional disregard of consumer disputes, the decision to not report disputed debts as disputed, and the purchase of debt collection from sources like Vivint. *Id.* ¶ 83. At no point did Mountain Run send Plaintiff a notice of assignment of debt pursuant to the requirements of Fla. Stat. § 559.715.

### B. Procedural History

On January 27, 2022, Plaintiff filed an Amended Complaint. Doc. 30. Relevant to the instant motion, the Amended Complaint asserts claims against Mountain Run under the FCRA and against Mountain Run, Fuller, and Carter under the FDCPA and the FCCPA. Plaintiff also sued Experian, but the claims against Experian have since been settled and dismissed with prejudice. Docs. 45, 46.

In Count II of the Amended Complaint, Plaintiff sues Mountain Run for violations of the FCRA. Doc. 30 ¶¶ 120–123. Plaintiff alleges that Mountain Run violated 15 U.S.C. § 1681s-2(b) when it failed to update, modify or correct its reports after receiving notices of dispute from Experian when any reasonable investigation would have revealed the purported Vivint debt was a result of fraud or misrepresentation and could not be verified as accurate. *Id.* ¶ 121. Plaintiff alleges that Mountain Run's conduct was willful and intentional, or alternatively, was done with

a reckless disregard for its duties under the FCRA to make reasonable investigations. *Id.* ¶ 122.

In Count III of the Amended Complaint, Plaintiff sues Mountain Run, Carter, and Fuller for violations of the FDCPA. Doc. 30 ¶¶ 124–131. Plaintiff alleges that Mountain Run, Carter and Fuller violated 15 U.S.C. § 1692e(8) by communicating credit information which they knew, or should have known, to be false, and by communicating credit information which they knew was disputed, without disclosure of the dispute, in their reports to Experian. Doc. 30 ¶¶ 127, 128. Plaintiff further alleges that Mountain Run, Carter, and Fuller violated 15 U.S.C. § 1692f by using unfair methods to collect a debt, when Mountain Run intentionally reported information to Experian that it knew was inaccurate, and then illegally posted the Vivint debt on Stephenson's credit report, knowing this would adversely affect his credit reports and scores, in order to pressure him to pay a debt which was not owed and likely fabricated. Doc. 30 ¶ 129. Plaintiff alleges that the FDCPA violations were conducted pursuant to policies put in place by Carter and Fuller and under their direction and control, and as such, Carter and Fuller are jointly and severally liable with Mountain Run for the stated violations of the FDCPA. *Id.* ¶¶ 130, 131.

In Count IV of the Amended Complaint, Plaintiff sues Mountain Run, Carter, and Fuller for violating § 559.72(5), Fla. Stat., when Mountain Run reported the debt to Experian, a credit reporting agency, with full knowledge that the information it was reporting about the debt was false. *Id.* ¶ 133. Mountain Run, Carter, and Fuller violated § 559.72(9), Fla. Stat., when Mountain Run asserted a legal right that did not

exist, specifically, the right to collect a debt without first sending notice of assignment of debt and waiting the requisite 30 days before taking any further action. *Id.* ¶ 134. Mountain Run, Carter, and Fuller violated § 559.72(9), Fla. Stat., when Mountain Run asserted a debt was legitimate when it knew it was not. *Id.* ¶ 135. Plaintiff alleges Mountain Run, Carter, and Fuller made their reports to Experian with malice, in an attempt to intentionally harm Stephenson. *Id.* ¶ 136. Plaintiff alleges that the FCCPA violations were conducted pursuant to policies put in place by Carter and Fuller and under their direction and control, and as such, Carter and Fuller are jointly and severally liable with Mountain Run for the stated violations of the FCCPA. *Id.* ¶¶ 138, 139.

### C. Service and Defaults

On February 17, 2022, Plaintiff filed a return of service for Mountain Run reflecting service of the Amended Complaint on the registered agent for Mountain Run. Doc. 33. Plaintiff filed a Motion for Clerk's Entry of Default against Mountain Run. Doc. 36. On March 7, 2022, the Clerk entered default against the Defendant Mountain Run. Doc. 37.

On February 17, 2022, Plaintiff filed a "Proof of Service" reflecting substitute service on Brian Fuller. Doc. 34. On February 18, 2022, the Plaintiff filed an affidavit of service showing substitute service on Chris Carter. Doc. 35. The Magistrate Judge directed Plaintiff to file a legal memorandum regarding the sufficiency of service on Defendants Fuller and Carter. Doc. 38.

On April 6, 2022, Plaintiff filed his renewed motion for Clerk's Defaults against Fuller and Carter. In the motion, Plaintiff sets forth the sufficiency of service on Fuller through substitute service of a co-occupant of the dwelling. The affidavit of the process server reflects that, in prior attempts to serve him at the same address, the doormat reflected it was the "Fuller's" home, public records show that Brian Fuller owned the house, and neighbors confirmed that he and his family lived there. *See* Doc. 11. Additionally, upon attempted service of the Amended Complaint, there was a package for Ayme Fuller at the door. Doc. 34.

The return of service for Carter reflects that he was served by substitute service at the offices of Mountain Run. Doc. 35. In his Motion for Clerk's Default against Carter, Plaintiff explains that Carter was served via the Collections Manager for the business he owns. Personal service on Carter was attempted four times at the business. When Carter was unavailable during any of those attempts, the process server left the papers with the person who appeared to be in charge at the time pursuant to Fla. Stat. § 48.031(2)(b) ("Substituted service may be made on an individual doing business as a sole proprietorship at his or her place of business, during regular business hours, by serving the person in charge of the business at the time of service if two attempts to serve the owner are made at the place of business.").

Clerk's Defaults were entered against both Carter and Fuller on April 7, 2022. Docs. 41, 42. Thereafter, Plaintiff filed the instant motion for default judgment. Doc. 43.

## II.    LEGAL STANDARD

When a defendant fails "to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter" the defendant's default upon the plaintiff's request. Fed. R. Civ. P. 55(a). After the clerk enters the default, the plaintiff may proceed by seeking default judgment. *See* Fed. R. Civ. P. 55(b).

A defendant who defaults is deemed to have "admit[ted] the plaintiff's well-pleaded allegations of fact." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987); *see also Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.").[1]   However, "default does not in itself warrant the court in entering a default judgment"—a court must still determine whether the factual allegations of the complaint provide a sufficient basis for the judgment entered, and "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu Constr. Co.*, 515 F.2d at 1206. Similarly, a plaintiff is entitled to only those damages adequately supported by the record. *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985).

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

## III.   DISCUSSION

Stephenson seeks default judgment and an award of damages against Mountain Run, Carter, and Fuller. Federal Rule of Civil Procedure 55(a) provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b). *DirectTV, Inc. v. Griffin*, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003).

### A. Personal Jurisdiction

In determining whether default judgment is proper, a court must consider whether personal jurisdiction exists. *See Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 734 F.2d 639 (11th Cir. 1984). The Amended Complaint alleges that Mountain Run is a Florida limited liability company and that Carter and Fuller are its owners. Stephenson is a citizen of Florida, and Defendants attempted to collect a debt from him in Florida. Florida Statute § 48.193(1)(a) provides that a person or entity submits himself to the jurisdiction of the State of Florida by "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1). Review of the well-pleaded allegations of Plaintiff's Amended Complaint reflect that Mountain Run, Carter, and Fuller were carrying on a debt collection business in the State thereby subjecting themselves to personal jurisdiction in Florida. In assessing personal jurisdiction,

10

however, the Court must also assess the validity of service of process. *See In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) (stating that "insufficient service of process . . . implicates personal jurisdiction and due process concerns"). The Court concludes it has personal jurisdiction over and that service was effective as to Defendants Mountain Run and Fuller, but not Carter. Each Defendant is addressed in turn.

### 1. Service on Mountain Run

Under the federal rules, a plaintiff may serve a corporate defendant by:

> [D]elivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]

Fed. R. Civ. P. 4(h)(1)(B). A plaintiff may also serve a defendant by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1). The Amended Complaint identifies Mountain Run as a limited liability company. Florida Statutes permit process to be served on a limited liability company by serving the registered agent or, if that is not possible, then in certain circumstances, service can be made on a member, manager or employee. Fla. Stat. § 48.062. Here, Mountain Run was served with a summons and copy of the Amended Complaint by serving its Florida registered agent. *See* Doc. 33. Service on Mountain Run is valid.

## 2. Service on Fuller

The rules regarding service of process on an individual are set out in Federal Rule of Civil Procedure 4. Rule 4(e) provides that an individual may be served by giving a copy of the summons and complaint to the individual personally; leaving a copy of the summons and complaint with an age-appropriate person who lives at the individual's "dwelling or usual place of abode;" serving a copy on the person's agent "authorized by appointment or by law" to receive process; or by a manner permitted under the laws of the state in which the federal district court is located for an action brought in a court of general jurisdiction in that state. Fed. R. Civ. P. 4(e). The process server's affidavit demonstrates service on Fuller was proper by leaving a copy of the summons and Amended Complaint with an individual of suitable age who resides at Fuller's home. Doc. 34; *see also* Doc. 11.

## 3. Service on Carter

Here, Plaintiff purports to serve Carter by serving the collections manager at Mountain Run. "Because the statutes that allow for substitute service of process are an exception to the general rule requiring that a defendant be personally served, 'due process values require strict compliance.'" *EHR Aviation, Inc. v. Lawson*, No. 3:09-CV-210-TJC-TEM, 2011 WL 46119, at *2 (M.D. Fla. Jan. 6, 2011) (quoting *Monaco v. Nealon*, 810 So. 2d 1084, 1085 (Fla. 4th DCA 2002)); *see also Aero Costa Rica, Inc. v. Dispatch Servs., Inc.*, 710 So. 2d 218, 219 (Fla. 3d DCA 1998) ("Statutes which govern substituted service of process are to be strictly construed and also, they must be strictly complied with.").

12

In Florida, an individual may be served at his place of employment under two conditions. First, when contacted by a process server, an employer must permit the authorized person to serve the employee in a designated area. Fla. Stat. § 48.031(1)(b). Second, which is the relevant provision here, "service may be made on an individual doing business as a sole proprietorship at his or her place of business, during regular business hours, by serving the person in charge of the business at the time of service if two or more attempts to serve the owner have been made at the place of business." Fla. Stat. § 48.031(2)(b). Although the process server's affidavit reflects multiple unsuccessful attempts to serve Carter at Mountain Run (*see* Doc. 35), the record evidence is that Carter is not a sole proprietor. *See* Doc. 30 ¶¶ 16, 17 (both Fuller and Carter are alleged to be owners of Mountain Run). Moreover, there is no record evidence that the collections manager served was "the person in charge of the business at the time of service." Accordingly, construing the Florida substitute service statute strictly, as the Court must do on the instant motion, the Court finds that for purposes of the motion for default judgment, service on Carter was invalid.

### B. Liability

#### 1. FCRA (Count II)

Stephenson sues Mountain Run for violations of the FCRA, specifically, 15 U.S.C. § 1681s-2(b), because Mountain Run failed to update, modify, or correct reports after receiving notices of dispute from Experian. Section 1681s–2(b) requires furnishers of information to investigate and respond promptly to notices of customer disputes after receiving notice of the dispute from a consumer reporting agency. *Green*

*v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008) (citing 15 U.S.C. § 1681s–2(b)(1)). To bring a claim under § 1681–2(b), a furnisher must have received notice of the dispute from a consumer reporting agency. *Id.* at 642. Stephenson's allegations, to which Mountain Run has not responded, establish that in March 2020 Stephenson disputed the Vivint debt to Experian; Experian sent an automated request to Mountain Run to verify the debt; without undertaking a reasonable investigation, Mountain Run verified the debt as accurate; no evidence existed to support Mountain Run's conclusion that Stephenson owed the Vivint debt; and Mountain Run failed to report that the debt was disputed. Plaintiff made similar disputes in April and July 2020, which had no different result. Plaintiff's well-pleaded allegations establish Mountain Run's three violations of the FCRA under § 1681s–2(b), and by its default, Mountain Run admits these allegations as true. Stephenson is entitled to judgment by default on its FCRA claims against Mountain Run in Count II.

### 2. *FDCPA (Count III)*

In Count III, Stephenson sues Mountain Run, Carter, and Fuller for violations of the FDCPA, specifically 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692e(8), and 1692f(1), when Mountain Run attempted to collect from Stephenson the Vivint debt, which Plaintiff alleges was an invalid debt not owed by him. Sections 1692e and 1692e(10) prohibit the use of any false, deceptive, and misleading representations in connection with the collection of a debt. Stephenson alleges that Defendants violated these provisions by reporting the Vivint debt to Experian and continuing to report it without indicating that Plaintiff disputed the debt.

14

Similarly, 15 U.S.C. § 1692e(2)(a) prohibits a debt collector's false representation of "the character, amount, or legal status of any debt[.]" Stephenson alleges that Defendants violated 15 U.S.C. § 1692e(2)(a) by using false representations about the character, amount, or legal status of a debt by reporting Stephenson's purported Vivint Debt to Experian in an attempt to compel him to pay a fabricated, disputed debt, and continued to report it – as a non-disputed debt – even after Plaintiff disputed the debt.

Stephenson alleges that Mountain Run, Carter, and Fuller violated 15 U.S.C. § 1692e(8) by communicating credit information which they knew, or should have known, to be false when Mountain Run reported information to Experian about a debt which Mountain Run knew, or had reason to know, was not owed by Stephenson and in communicating credit information which they knew was disputed, without disclosure of dispute, in their reports to Experian.

Stephenson also alleges Mountain Run, Carter, and Fuller violated 15 U.S.C. § 1692f of the FDCPA by using unfair methods to collect a debt, when Mountain Run intentionally reported information to Experian that it knew was not accurate, and then illegally reported the Vivint debt on Mr. Stephenson's credit report, knowing this would adversely affect Stephenson's credit reports and scores, in order to pressure him to pay a debt which was not owed by him and was likely fabricated.

Stephenson alleges that the FDCPA violations were conducted pursuant to policies put in place by Mountain Run's owners, Carter and Fuller, and under their direction and control.  As such, he argues that Carter and Fuller are jointly and

severally liable with Mountain Run for the stated violations of the FDCPA. Stephenson's well-pleaded allegations establish the FDCPA violations, and by their defaults, Mountain Run and Fuller admit these allegations as true. Stephenson is entitled to judgment by default on its FDCPA claims against Mountain Run and Fuller in Count III.[2]

### 3. FCCPA (Count IV)

The FCCPA permits a "debtor" to bring a civil action against a person who violates the statute's provisions. § 559.77(1), Fla. Stat. In Count IV of the Amended Complaint, Stephenson asserts claims pursuant to two provisions of the FCCPA. Stephenson sues Mountain Run, Carter, and Fuller for violations of §§ 559.72(5) and (9), Fla. Stat.

First, Stephenson alleges that Mountain Run violated Section 559.72(5), Florida Statutes, when it reported the purported Vivint debt to Experian with full knowledge that the information was false.  A person violates section 559.72(5) if he "[d]isclose[s] to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false." Fla. Stat. § 559.72(5).

Next, Stephenson alleges Mountain Run, Carter and Fuller violated section 559.72(9) by asserting the Vivint debt was legitimate when it knew it was not. To

---

[2] Because the Court found above that service was not properly effected on Carter, no default judgment will be entered against him for Plaintiff's claims in Count III.

establish a violation of section 559.72(9), "it must be shown that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist." *Read v. MFP, Inc.*, 85 So. 3d 1151, 1155 (Fla. 2d DCA 2012) (quoting *Pollock v. Bay Area Credit Serv., LLC*, No. 8-61101-Civ, 2009 WL 2475167, at *9 (S.D. Fla. Aug. 13, 2009)). Stephenson alleges that the FCCPA violations were conducted pursuant to policies put in place by Carter and Fuller and under their direction and control, and as such, Carter and Fuller are jointly and severally liable with Mountain Run for the stated violations of the FCCPA. Stephenson's well-pleaded allegations establish the FCCPA violations, and by their defaults, Mountain Run and Fuller admit these allegations as true. Stephenson is entitled to judgment by default on his FCCPA claims against Mountain Run and Fuller in Count IV. [3]

## C. DAMAGES

Having established liability as to Mountain Run and Brian Fuller, the Court turns to Plaintiff's damages. Although default judgment on liability accepts well-pleaded allegations as true, allegations regarding damages are not automatically accepted. *Miller v. Paradise of Port Richey*, 75 F.Supp.2d 1342, 1346 (M.D. Fla. 1999). "Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co.*, 777 F.2d at 1544 (citations and internal quotation marks omitted). (11th Cir. 1985); *see Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th

---

[3] Because the Court found above that service was not properly effected on Carter, no default judgment will be entered against him for Plaintiff's claims in Count IV.

Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters.").

Although Federal Rule of Civil Procedure 55(b) contains permissive language with respect to holding an evidentiary hearing before entering judgment, the Eleventh Circuit has held that "judgment of default awarding cash damages [can] not properly be entered 'without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation.'" *Organizacion Miss Am. Latina, Inc. v. Urquidi*, 712 F. App'x 945, 945 (11th Cir. 2017) (quoting *Adolph Coors Co.*, 777 F2d at 1543; *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). Because the damages sought here are statutory, the Court finds an evidentiary hearing unwarranted.

### 1. Statutory Damages

Stephenson seeks statutory damages of $3,000 against Mountain Run for the three FCRA violations pursuant to 15 U.S.C. § 1681n(a)(1)(A), which provides for an award of actual damages sustained or statutory damages of not less than $100 and not more than $1,000 for any willful violation of the FCRA. "A violation is 'willful' for the purposes of the FCRA if the defendant violates the terms of the Act with knowledge or reckless disregard for the law." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009) (citation omitted).

Actual damages under the FCRA "may include damages for humiliation or mental distress even if the consumer has suffered no out-of-pocket losses, as well as damages for injury to reputation and creditworthiness." *Tacoronte v. Tate & Kirlin Assocs.*, No. 6:13-CV-331-RBD-DAB, 2013 WL 5970720, at *9 (M.D. Fla. Nov. 8,

18

2013) (quoting *Cousin v. Trans Union Corp.*, 246 F.3d 359, 369 n. 10 (5th Cir. 2001) (citing 15 U.S.C. § 1681 o(a)). Plaintiff has not provided any record evidence of emotional distress damages, but he seeks statutory damages of $1,000 for each of the three occasions Mountain Run willfully violated the FCRA. The well-pleaded allegations establish the three violations, and the Court finds the statutory award of $1,000 per violation, for a total award of $3,000 for the FCRA violations, to be appropriate and warranted in the circumstances. *See Younger v. Experian Info. Sols., Inc.*, 817 F. App'x 862, 869 (11th Cir. 2020) (holding that where the violation is willful, the FCRA provides for statutory damages up to $1,000 per violation).

The FDCPA and FCCPA, on the other hand, cap a plaintiff's statutory damages in the amount of $1,000 per action, not per violation. *Arianas v. LVNV Funding LLC*, 54 F. Supp. 3d 1308, 1311 (M.D. Fla. 2014) (citing *Harper v. Better Business Services, Inc.*, 961 F.2d 1561 (11th Cir. 1992) ("FDCPA clearly states that additional damages 'in the case of any action by an individual' [shall not exceed] $1,000."). For Mountain Run, Fuller, and Carter's FDCPA violations, Stephenson seeks the maximum statutory damages of $1,000.00, jointly and severally from the Defendants, pursuant to 15 U.S.C. § 1692k(a)(2)(A). Under the FDCPA, a debt collector that fails to comply with any provision of the FDCPA is liable, "in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). In determining statutory damages under § 1692k(a)(2)(A), a court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was

intentional." 15 U.S.C. § 1692k(b)(1). The Court finds the well-pleaded allegations support that Defendants' actions were intentional and Plaintiff is entitled to the maximum statutory damages of $1,000.

Any person violating the provisions of the FCCPA is liable for actual damages and for additional statutory damages as the court allows, but not exceeding $1,000. Fla. Stat. § 559.77(2). "In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with [the FCCPA], the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional." *Id.* The Plaintiff does not seek actual damages. Based upon the well-pleaded allegations, which are admitted by Mountain Run and Fuller's defaults, the Court concludes that the maximum statutory damages of $1,000 is warranted given the alleged intentional FCCPA violations.

    2. *Attorney's Fees and Costs*

The FCRA, FDCPA, and FCCPA allow for the recovery of attorney's fees and costs by a prevailing plaintiff. *See* 15 U.S.C. § 1681n(a)(3); 15 U.S.C. § 1692k(a)(3); and Fla. Stat. § 559.77(2). Plaintiff submits the affidavit of his counsel, Phillip R. Goldberg, Esquire (Doc. 43-1), of the Seraph Legal, P.A., law firm, in support of his request for $11,322.50 in attorney's fees for work performed by himself, attorney Brandon Morgan, and three paralegals on behalf of Plaintiff. Plaintiff additionally seeks $897.77 in costs as the prevailing party.

The Court uses the lodestar method to determine a reasonable fee award, which it calculates by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable. *See Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (internal quotation marks omitted). As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Plaintiff seeks $10,115.00 for 28.9 hours of attorney time at $350.00 per hour and $1,207.50 for 6.9 hours of paralegal time at $175.00 per hour. Doc. 43-1 at 6. The Goldberg affidavit details the professional experience of the individuals representing Plaintiff and further explains the basis for the rates requested, citing to a report identifying $350 as the average hourly rate for consumer attorneys in the Tampa area. Doc. 43-1 at 8. The affidavit attaches detailed billing records for the services rendered. Doc. 43-1 at 4–7. Attorney Goldberg attests that the time spent was reasonable and necessary to prosecute his client's claims. He further states that every effort has been made to keep costs and fees low, including having paralegals draft and handle routine matters. Attorney Goldberg has reviewed the time on this case and reduced or

eliminated any item found to be excessive. Plaintiff does not seek a multiplier. Doc. 43-1 at 1–3.

The Court has reviewed counsel's affidavit along with the billing records and other attachments and concludes that the fees requested are reasonable and related, except for those fees that are directly attributable to prosecution and resolution of Plaintiff's claims against Experian. The Court recognizes that the instant motion and affidavit were filed prior to Plaintiff's settlement with Experian in which the parties agreed to bear their own costs and fees. *See* Docs. 45, 46.

Specifically, the Court finds a deduction of $980 is warranted for 2.8 hours of attorney time spent by Brandon Morgan, Esquire, in this case related to Plaintiff's claims against Experian as reflected in the entries on the following dates for 2021: October 15 (.3); October 21 (.1); October 21 (.1); October 25 (.1); November 30 (.4); November 30 (.4); December 10 (.6); and the following dates for 2022: January 24 (.1); March 15 (.4); March 23 (.3). After deducting the 2.8 hours at a rate of $350 per hour for the time spent by counsel on matters related solely to Experian, the Court will grant Plaintiff's request for attorney's fees in the amount of $10,342.50.[4]

Additionally, Stephenson seeks taxable costs in the amount of $897.77. In general, 28 U.S.C. § 1920 governs the assessment of costs. *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 760 (1980) ("history suggests that § 1920 and § 1927 should be read together"). Under § 1920, the Court may tax as costs the following:

(1) Fees of the clerk and marshal;

---

[4] $11322.50 - $980 = $10,342.50.

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. The costs Plaintiff seeks to recover are the filing fee and process server costs, both of which are recoverable under § 1920. However, fees for service of process on Defendant Experian, which represents $72.75 of the costs sought, are not recoverable from these Defendants. Thus, the Court will reduce the costs awarded by $72.75, for total taxable costs recoverable of $825.02.[5]

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.      Plaintiff's Renewed Motion for Default Judgment Against Defendants Mountain Run Solutions, LLC; Chris Carter, and Brian Fuller (Doc. 43) is **GRANTED in part** as set forth herein. Plaintiff is entitled to Default Judgment against Mountain Run, LLC, and Brian Fuller. The motion is **DENIED** as to Defendant Chris Carter.

2.      Plaintiff, Patrick Stephenson, is entitled to Judgment in his favor as to his FCRA claims against Mountain Run, LLC. Plaintiff, Patrick Stephenson, shall

---

[5] $897.77 - $72.75 = $825.02.

recover from Mountain Run, LLC statutory damages in the amount of **$3,000**, with interest as provided by law, as to Count II.

      3.     Plaintiff, Patrick Stephenson, is entitled to Judgment in his favor as to his FDCPA claims against Mountain Run, LLC and Brian Fuller. Plaintiff, Patrick Stephenson, shall recover from Mountain Run and Brian Fuller, jointly and severally, statutory damages in the amount of **$1,000**, with interest as provided by law, as to Count III.

      4.     Plaintiff, Patrick Stephenson, is entitled to Judgment in his favor as to his FCCPA claims against Mountain Run, LLC and Brian Fuller. Plaintiff, Patrick Stephenson, shall recover from Mountain Run and Brian Fuller, jointly and severally, statutory damages in the amount of **$1,000**, with interest as provided by law, as to Count IV.

      5.     Plaintiff, Patrick Stephenson, is entitled to recover from Defendants Mountain Run and Brian Fuller, jointly and severally, taxable costs in the amount of **$825.02** and attorney's fees in the amount of **$10,342.50**.

      6.     The Clerk is directed to enter a Judgment in favor of Plaintiff Patrick Stephenson and against Defendants Mountain Run, LLC and Brian Fuller consistent with this Order.

      7.     To the extent Plaintiff desires to obtain a judgment against Defendant Chris Carter, he must properly serve Defendant Chris Carter within thirty (30) days

from entry of this order and then move for entry of a clerk's default, if Defendant Chris Carter fails to respond.

8.      Having determined that service upon Defendant Chris Carter was invalid, the Clerk's entry of Default at docket entry 41 is **VACATED**.

**DONE AND ORDERED** in Tampa, Florida on March 17, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any